UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| DIANE HOBBS, INDIVIDUALLY § | | |
| AND AS REPRESENTATIVE OF § | | |
| THE HEIRS AND ESTATE OF § | | |
| DAVID J. HOBBS, § | | |
| § | | |
| Plaintiff, § | | CIVIL ACTION NO. V-06-97 |
| § | | |
| v. § | | |
| § | | |
| BAKER HUGHES OILFIELD § | | |
| OPERATIONS, INC., ET AL., § | | |
| § | | |
| Defendant. § | | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Baker Hughes Oilfield Operations, Inc.'s ("Baker Hughes") Motion for Summary Judgment (Dkt. No. 37). After considering the motion, the responses thereto, the applicable law and the entire record, the Court is of the opinion that the motion should be granted.

**Background**

This dispute arises out of the denial of David Hobbs' ("Mr. Hobbs") life insurance benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. Dkt. No. 1 at pp.1-3; Dkt. No.15 at p.5. Plaintiff Diane Hobbs ("Hobbs" or "Mrs. Hobbs"), individually and as representative of her late husband and the heirs of his estate, brings suit against Mr. Hobbs' former employer, Baker Hughes, in an effort to recover the value of life insurance benefits Plaintiff maintains she would have received under the Baker Hughes Health and Welfare Plan ("the Plan") but for a breach of fiduciary duty by Mr. Hobbs' former

employer.[1]  Dkt. No. 15 at pp.4-6.

Mr. Hobbs worked for Baker Hughes or its predecessor entities from 1979 to 2003.  *Id.* at p.4.  During his employment, Baker Hughes provided Mr. Hobbs with basic and supplemental life insurance coverage through the Plan.  *Id.*  Mr. Hobbs' Plan life insurance benefits totaled $195,000.00, comprised of $65,000.00 in basic life insurance insured through Aetna, Inc. ("Aetna"), and $130,000.00 in supplemental life insurance insured through Metropolitan Life Insurance Company, Inc. ("MetLife").  Dkt. No. 37 at p.4, Exs. F, G & H.  Mrs. Hobbs was the 50% beneficiary of both plans.  *Id.*  The Hobbs' two children were listed as co-equal beneficiaries of the remaining 50%.  *Id.*

On August 7, 2003, Baker Hughes terminated Mr. Hobbs' employment.  Dkt. No. 15 at p.4.  Approximately two months earlier, in June 2003, Baker Hughes sent Mr. Hobbs the Baker Hughes 2003 Summary Plan Description (the "SPD").  Baker Hughes 2003 SPD, Dkt. No. 37, Ex. C.  The SPD provided detailed information regarding the basic and supplemental life insurance policies.  *Id.* at pp.118-26.  The SPD included provisions describing an employee's ability to convert basic coverage and "port" supplemental coverage to individual policies following termination from Baker Hughes' employment, at which time an employee's company-provided coverage would cease.  *Id.* at pp.121, 126.  On the day of his release, Baker Hughes provided Mr. Hobbs with written notice in the form of a letter (the "Baker Hughes Letter") that his company-provided life insurance coverage would cease upon the day of his termination and that he had the option to convert or port his coverage into personal policies.  Letter from Baker Hughes to Mr. Hobbs (August 7, 2003), Dkt. No.

---

[1] Plaintiff originally filed suit against Baker Hughes as well as its outsourced benefits center operator Hewitt Associates, LLC ("Hewitt Associates") and third party insurers Metropolitan Life Insurance Company, Inc. ("MetLife") and Seabury & Smith, Inc. (d/b/a Marsh at Work Solutions).  *See* Dkt. No. 15.  All defendants other than Baker Hughes were dismissed from this suit without prejudice pursuant to this Court's July 16, 2007 Order.  *See* Dkt. No. 35.

37, Ex. B.  The Baker Hughes Letter stated the following:

> Your Company provided Life and AD&D [Accidental Death and Dismemberment] coverage(s) will end of the date of your termination.  You may apply to convert your coverage to an individual policy.  *You must apply for the policy within 31 days after your coverage ends.  You will receive a conversion application with your COBRA enrollment materials*.

*Id.* (emphasis added).

After Mr. Hobbs' termination, Baker Hughes and MetLife prepared various conversion-related documents ("Conversion Notices and Application") further informing Mr. Hobbs of his ability to continue his basic and/or supplemental life insurance.  *See* Dkt. No. 37, Exs. F, G & H.  These documents included notices and applications instructing Mr. Hobbs how to convert or port his insurance policies.  *Id.*  Due to an alleged administrative oversight,  Mr. Hobbs' Conversion Notices and Application were mailed to Baker Hughes, 7301 U.S. Highway 59 South, Victoria, Texas—the Baker Hughes worksite where Mr. Hobbs had been employed—rather than his residential address.  Dkt. No. 37 at p.6; Ex. E.  Mr. Hobbs' Baker Hughes Personnel Status Form at the time of his termination provided that all termination-related documents should be mailed to Hobbs' residential address—102 Birchwood Drive, Victoria, Texas.  *Id.*  According to the Defendant, Mr. Hobbs had previously provided that Baker Hughes use the address of the Baker Hughes worksite as his residential address for various personal mail matters such as credit card statements.  Dkt. No. 37 at p.6.  Although Mr. Hobbs' Personnel Status Form indicated that his residential/Birchwood address be used for termination-related documents, Baker Hughes maintains that "[f]or unknown reasons" the address change was never made in its data processing system.  *Id.*  Thus, based on the information contained in Baker Hughes' data system, Baker Hughes and MetLife sent Mr. Hobbs' Conversion Notices and Application to the wrong address—the Baker Hughes worksite.  *Id.*

On May 7, 2004—nine months after his termination from Baker Hughes—Mr. Hobbs passed

away unexpectedly of a brain aneurism.  Dkt. No. 37 at p.5.  Despite receiving the SPD and Baker Hughes Letter, at no time between his termination and his death did either Mr. Hobbs or his wife take any action to convert or inquire about converting Mr. Hobbs' Baker Hughes life insurance coverage to an individual policy.  Deposition of Diane Hobbs, Dkt. No. 37, Ex. A at pp.33, 97-99.

Following Mr. Hobbs' passing, Mrs. Hobbs made several inquiries regarding the life insurance benefits and was informed she was not entitled to any benefits according to the terms of the Plan because her husband's employment had been terminated and he failed to convert or port his coverage into personal policies within the 31 days allowed to do so.  Deposition of Diane Hobbs, Dkt. No. 37, Ex. A at pp.33, 72-73, 97-99.  Although it is not entirely clear, it appears that the Hobbs were unaware that the Conversion Notices and Application had been mailed to the Baker Hughes worksite until after Mrs. Hobbs' various inquiries to Baker Hughes.  Once Mrs. Hobbs was informed that a package addressed to Mr. Hobbs had been held at the worksite for some time, she drove to the worksite and picked up the documents.  *Id.*  Mrs. Hobbs collected the Conversion Notices and Application from the Baker Hughes worksite in December 2004.  *Id.*

In September 2006, Mrs. Hobbs initiated this action in state court bringing various state causes of action including claims for breach of contract, Deceptive Trade Practices Act violations, Texas Insurance Code, Article 21.21 violations, breaches of good faith and fair dealing, and negligence.  *See* Dkt. No. 1, Ex. B at pp.4-5.  Defendants proceeded to remove this case to federal court pursuant to ERISA's "complete preemption" doctrine.  *See* Dkt. No. 1.  On January 24, 2007, Hobbs filed her Amended Original Complaint (Dkt. No. 15) in this Court.  Hobbs' Amended Original Complaint asserts claims under ERISA sections 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3) and

4

1132(c).[2]

Baker Hughes moves for summary judgment on the following grounds: (1) as a matter of law, Mrs. Hobbs is not entitled to life insurance benefits under ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) because Mr. Hobbs was not employed by Baker Hughes at the time of his death and did not timely convert his coverage into personal policies; (2) as a matter of law, Mrs. Hobbs never requested information from Baker Hughes that she did not receive and thus cannot recover under ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B); and (3) Baker Hughes did not violate its fiduciary duties as plan administrator, and even assuming that it did, Hobbs has (a) failed to establish a genuine issue of material fact as to whether Baker Hughes' alleged fiduciary breach caused Mr. Hobbs' failure to convert his policies, and (b) the damages Hobbs seeks do not fall under the "appropriate equitable remedies" authorized by ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3).

## Standard of Review

A summary judgment shall be issued if the pleadings and evidence "show that there is no

---

[2] Hobbs' Amended Original Complaint also continues to assert her state law claims. *See* Dkt. No. 15 at pp.6-7. In doing so, Hobbs impliedly contends that ERISA may not apply to this case or preempt her state law claims. *See* Dkt. No. 15 at p.6 ("*If* this Honorable Court finds that [ERISA] applies . . . [the Plaintiff alleges means of recovery under its provisions in addition to her state law causes of action]) (emphasis added); *see also* Dkt. No. 38 at p.8 (reasserting Hobbs' vague contention that ERISA may not apply or preempt her state law claims). Although Hobbs impliedly challenges ERISA application and preemption, the Court notes that she has not moved to remand although the time for doing so has long passed. *See* 28 U.S.C. § 1447(c) (requiring a motion to remand to be filed within 30 days of notice of removal).

As an initial matter, ERISA clearly applies here as the Plan was one established and maintained by Baker Hughes for the purpose of providing its employee participants with insurance. *See* 29 U.S.C. § 1002(1); *McNeill v. Time Ins. Co.,* 205 F.3d 179, 189 (5th Cir. 2000). Accordingly, ERISA applies and vests this Court with jurisdiction to hear the matter. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987).

Hobbs' state law claims, moreover, are identical to those raised and found to have been preempted by ERISA in previous decisions. *See, e.g.*, *Hogan v. Kraft Foods*, 969 F.2d 142, 144 (5th Cir. 1992) (ERISA preempts state law claims for breach of contract, violations of the Texas Insurance Code, Article 21.21, violations of the Texas Deceptive Trade Practices Act, breaches of duty of good faith and fair dealing and negligence); *Ramirez v. Inter-Cont'l Hotels*, 890 F.2d 760 (5th Cir. 1989) (ERISA preempts statutes such the Texas Insurance Code which provide a cause of action for improper handling of insurance claims); *Boren v. N.L. Indus., Inc.*, 889 F.2d 1463 (5th Cir. 1989) (ERISA preempts the Texas Deceptive Trade Practices Act); *Hermann Hosp. v. MEBA Med. & Ben. Plan*, 845 F.2d 1286 (5th Cir. 1988) (ERISA preempts common law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract and fraud). Like the cases cited above, Hobbs' state law claims clearly relate to the ERISA plan at issue here and are thus preempted.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). In considering a motion for summary judgment, the Court construes factual controversies in the light most favorable to the non-movant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998). The burden is on the movant to convince the court that no genuine issue of material fact exists as to the claims asserted by the non-movant, but the movant is not required to negate elements of the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The non-moving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the non-movant will bear the burden of proof at trial, that party must produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1995). If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## Discussion

### I. Hobbs' Entitlement to Benefits Pursuant to ERISA § 502(a)(1)(B)

In Hobbs' Amended Original Complaint (Dkt. No. 15), she alleges she is entitled to benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). Dkt. No. 15 at p. 6. Baker Hughes'

first ground for summary judgment argues that, as a matter of law, Hobbs is not entitled to benefits under section 502(a)(1)(B).  Section 502(a)(1)(B) provides that a participant or beneficiary may bring a civil action "to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his right to future benefits *under the terms of the plan*."  29 U.S.C. § 1132(a)(1)(B) (emphasis added).  Baker Hughes maintains that the issue here is simple: under the plain terms of the Plan, Hobbs is precluded from benefit eligibility.

Indeed, the Plan "clearly provides that basic and supplemental life insurance coverage ends at the time of termination, unless the policies are converted."  Dkt. No. 37 at p.7; Baker Hughes SPD, Dkt. No. 37, Ex. C at pp.121, 126 (providing that coverage ends upon termination from employment unless the policy is either converted or ported).  It is beyond dispute that Mr. Hobbs was neither employed by Baker Hughes at the time of his death nor did he convert his coverage into a personal policy.  According to the plain terms of the Plan, Hobbs is clearly not entitled to recover any benefits pursuant to section 502(a)(1)(B).  Thus, the Court grants summary judgment on the ground that Hobbs may not recover benefits under section 502(a)(1)(B).

## II.  Hobbs' Entitlement to Damages Pursuant to ERISA § 502(c)(1)(B)

Baker Hughes also moves for summary judgment on the basis that, as a matter of law, Hobbs may not prevail based on any claim that Baker Hughes failed to "comply with a request for any information" pursuant to its duty established in ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B).  29 U.S.C. § 1132(c)(1)(B).  Section 502(c)(1)(B) provides that

> [a]ny administrator . . . *who fails or refuses to comply with a request for any information* which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such

failure or refusal, and the court may in its discretion order such other relief as it deems proper.

*Id.* (emphasis added).

Baker Hughes argues that because neither Mr. nor Mrs. Hobbs made a request for information, it did not "fail or refuse to comply with a request" for information. Dkt. No. 37 at p.19. Bolstering the plain reading of section 501(c)(1)(B) is the Fifth Circuit's observation in *Bannister v. Ullman*, 287 F.3d 394 (5th Cir. 2002), that "Section 502(c)(1) [] requires [a plaintiff] to make a request for [information] before liability may be imposed [under this provision]." 287 F.3d at 407; *see also Matassarin v. Lynch*, 174 F.3d 549, 570 (5th Cir. 1999) ("Given that the defendants do not appear to have denied any [of the plaintiff's requests for information], the district court did not abuse its discretion in refusing to assess penalties"). Plaintiff does not allege or provide evidence supporting an allegation that either she or her husband made any request for information that was not complied with. Moreover, Baker Hughes, without request, provided Mr. Hobbs with the Baker Hughes Letter and SPD notifying him of his option to convert his policies within 31 days of termination. That Baker Hughes failed to properly update its data processing system resulting in the mailing of the Conversion Notices and Application to the incorrect address does not establish liability under section 502(c)(1) of ERISA. Thus, Baker Hughes' motion for summary judgment on the basis that Baker Hughes did not fail to comply with a request for information is granted.

**III**.  **Baker Hughes' Breach of Fiduciary Duty and the Availability of "Appropriate Equitable Remedies" Under ERISA § 502(a)(3)**

Hobbs' primary contention is that Baker Hughes breached its fiduciary duties by failing to properly update its data systems resulting in the improper mailing of Mr. Hobbs' Conversion Notices and Application. Dkt. No. 15 at pp.5-6; Dkt. No. 38 at pp.5-6; Dkt. No. 41 at p10. Hobbs

8

asks that the Court issue the "appropriate equitable remedy" of ordering Baker Hughes to provide Mrs. Hobbs with the Conversion Notices and Application at the correct residential address and allow her to convert or port her late husband's policies as if Mr. Hobbs was incapacitated and she were guardian. *See* Dkt. No. 38 at p.10. This would retroactively enroll or reinstate Mr. Hobbs in the insurance plans via conversion, thus allowing recovery of the value of the benefits Mrs. Hobbs would have received under the Plan but for Baker Hughes' alleged fiduciary breach. *See id.* ("Plaintiff basically seeks reinstatement in the life insurance plans through the provision of the conversion ("porting") notice").

Baker Hughes, without contesting its status as a potentially liable fiduciary, first contends that it did not breach its fiduciary duties under ERISA.[3] Dkt. No. 37 at pp.10-12. Defendant goes on to argue that, even if it is found to have breached its fiduciary duties, Hobbs presents no genuine issue of material fact as to whether Baker Hughes' alleged fiduciary breach caused Mr. Hobbs' failure to convert his policies because even if Mr. Hobbs were to have properly received the Conversion Notices and Application, he would not have converted his coverage. Dkt. No. 39 at pp.4-5. Baker Hughes also alleges that the relief requested by Hobbs is not equitable in nature and

---

[3] Baker Hughes does not contest either its status as a fiduciary or that its act of entering Mr. Hobbs' address into its data processing system is an act that carries with it the fiduciary duties mandated by ERISA. The Court, however, notes that fiduciary status is not an all or nothing proposition; ERISA's statutory language indicates that a person is a plan fiduciary only "to the extent" that he possesses or exercises the requisite discretion and control. 29 U.S.C. § 1002(21)(A). Indeed, "ERISA deems a person a plan fiduciary to the extent that he or she 'exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises any authority or control respecting management or disposition of its assets,' or 'has any discretionary authority or discretionary responsibility in the administration of [the] plan." *Hatteberg v. Red Adair Co., Inc.*, 79 Fed.Appx. 70, 716 (5th Cir. 2003) (not designated for publication) (quoting 29 U.S.C. § 1002(21)(A)(i) & (ii)).

Although ERISA itself fails to define the "management" or "administration" of an employee benefit plan, courts have found that ministerial duties analogous to the data entry error complained of here are non-fiduciary in nature. *See id*; *see also Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) (recognizing that the "mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status"). Because recovery under section 502(a)(3) is predicated on a fiduciary breach, a finding that Baker Hughes' actions were not fiduciary in nature would preclude the equitable relief Hobbs seeks. However, even assuming Baker Hughes' actions were fiduciary in nature, as both parties seem to presume, as explained below, its breach of such duties does not allow Hobbs to recover.

has been foreclosed as a remedy by recent Fifth Circuit precedent. *Id.*

ERISA's section 502(a)(3) authorizes a participant or beneficiary to bring a civil action against a fiduciary for breach of its duties "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). For plaintiffs to be entitled to "appropriate equitable relief" under section 502(a)(3), they must establish that the defendant is (a) a plan fiduciary, (b) has breached its fiduciary duties under ERISA, (c) that such a breach caused the plaintiff's injury and (d) that the equitable relief sought is indeed appropriate. *See*, Brosted v. Unum Life Ins. Co. of Am., 421 F.3d 459, 465 (7th Cir. 2005) (observing that an ERISA plaintiff alleging breach of fiduciary duty must establish that the defendants are plan fiduciaries, they breached their fiduciary duties and the breach caused the plaintiff's harm); *Verizon Employee Benefits Comm. v. Fitzgerald*, 2007 WL 2080004 at *6 (N.D. Tex.) (predicating a finding that reinstatement was an appropriate equitable remedy by establishing a fiduciary duty existed and a breach and causation occurred); *see also Mathews v. Chevron Cor*p*.*, 362 F.3d 1172 (9th Cir. 2004) (allowing reinstatement as an appropriate remedy under ERISA Section 502(a)(3) after considering whether such relief was appropriate).

### A. Fiduciary Duty and Breach

"An ERISA fiduciary must act with prudence, loyalty and disinterestedness, requirements carefully delineated in the statute." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 307 (5th Cir. 2007) (discussing ERISA Section 404(a)). Section 404(a) of ERISA requires that a fiduciary act with "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" and "in accordance with the documents and

instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(B) & (D).

Hobbs maintains that Baker Hughes breached its fiduciary duties because Defendant did not act in accordance with the Plan's provisions.[4] Dkt. No. 38 at p.5 ("Defendant breached its fiduciary duty as plan administrator by failing to send written notice to Mr. Hobbs of his conversion rights at the address Defendant promised it would send it."); Dkt. No. 41. at p.10 ("Since Defendant promised to mail [the Conversion Notices and Application] to Mr. Hobbs' home address and since it did not, Defendant breached its fiduciary duty."). The SPD provides, in relevant part:

> If your employment ends, you may apply to convert your basic life insurance to an individual basic life policy offered by Aetna. *You'll receive an information package from the Baker Hughes Benefits Center with instructions on how to convert your policy.*
> . . .
> Your supplemental life insurance will end when your employment with Baker Hughes ends. You may port your supplemental life insurance benefit to another policy offered by MetLife.
>
> *You'll receive an information package from the Baker Hughes Benefits Center with instructions on how to port your policy.*
>
> Baker Hughes 2003 SPD, Dkt. No. 37, Ex. at pp.121, 126 (emphasis added).

Baker Hughes contends that it did not breach its fiduciary duties because it did not "deliberately and materially mislead" the Hobbs. Dkt. No. 37 at p.10. Defendant principally relies upon *Varity Corporation v. Howe*, 516 U.S. 489 (1996), for support. In *Varity*, the Supreme Court held that Section 502(a)(3) allows participants or beneficiaries of an ERISA plan to bring suit for

---

[4] Aside from the plain language of the SPD, Hobbs cites no authority supporting its breach of fiduciary duty argument in either its Amended Original Complaint (Dkt. No. 15), Response to Defendant's Motion for Summary Judgment (Dkt. No. 38) or Surreply (Dkt. No. 41). However, Fifth Circuit cases dealing with Section 404(a)(1)(D)'s requirement that a fiduciary act "in accordance with the documents and instruments governing the plan" have not involved the apportionment of equitable relief under Section 502(a)(3). Moreover, cases addressing Section 404(a)(1)(D) also largely involve other substantive violations of ERISA fiduciary duties, and the failure to follow plan documents was either cumulative of other violations or negligible in the courts' assessing of liability. *See, e.g.*, *Reich v. Lancaster*, 843 F. Supp. 194, 199-201 (N.D. Tex. 1993).

individualized equitable relief against their employer/plan administrator for breaches of fiduciary duties that cause an injury where Section 502 does not otherwise provide an adequate remedy.[5] *Varity*, 516 U.S. at 507-516.  The *Varity* Court found that an employer-defendant breached its fiduciary duties by making numerous affirmative misrepresentations to its employee-plaintiffs regarding their insurance coverage.  *Id.* at 505.  Relying on the law of trusts, the Court explained that "[t]o participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act solely in the interest of the participants and beneficiaries . . .[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries . . ." *Id.* (citations omitted).

Relying on this reasoning, the Fifth Circuit has commented that ERISA employers do not breach their fiduciary duties when the plaintiff "make[s] no allegations [] of deceptive trade practices, misrepresentations, or other behavior *typically associated with fiduciary breaches by employers under ERISA*, as required by *Varity*."  *Bodine v. Employers Cas. Co.*, 352 F.3d 245, 251 (5th Cir. 2003) (emphasis added).  Although the *Bodine* court ultimately found that the defendant-employer did not act as a fiduciary, and thus no breach of fiduciary duty was possible, its characterization of fiduciary breaches in light of *Varity* influences this Court.  Other Courts have similarly found that breaches of fiduciary duties underlying a section 502(a)(3) claim must be predicated by purposeful misconduct or intentional deception.  *See Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 466 (7th Cir. 2005) (noting that an ERISA breach of fiduciary duty claim requires "an intent to deceive"); *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004) (observing that "while there is a duty to provide accurate information under ERISA, negligence in

---

[5] As discussed above, under the plain terms of the Plan, Hobbs is not entitled to relief under Section 502(a)(1)(B) because, at the time of Mr. Hobbs' death, Mr. Hobbs was no longer a member of the Plan and had not converted his coverage within the time allotted.

fulfilling that duty is not actionable"). Although neither *Varity* nor *Bodine* necessarily establishes that a fiduciary employer *must* intentionally mislead a plan participant or beneficiary to breach its duty under ERISA, and the Seventh Circuit cases cited above are merely persuasive authority, the Court is convinced that the action presented here—Baker Hughes' mailing the Conversion Notice and Application to the wrong address—does not rise to the level of misconduct "typically associated with fiduciary breaches by employers under ERISA."[6] *Id.*

A brief review of the Defendant's actions supports the Court's finding that Baker Hughes' failure to mail the Conversion Notices and Application to the correct address is not an act that gives rise to cause of action based on a breach of fiduciary duty. First, Baker Hughes provided Mr. Hobbs with the SPD approximately two months before his release from employment. Affidavit of Ann Allen, Dkt. No. 37, Ex. D at ¶¶ 4-6 (stating that the SPD was sent to all of Baker Hughes' 13,907 employees in June 2003). Defendant also provided Mr. Hobbs with the Baker Hughes Letter on his final day of employment which clearly put him on notice of the opportunity to convert or port his policies to individual coverage. Baker Hughes Letter, Dkt. No. 37, Ex. B. The providing of these documents reveal not only that Mr. Hobbs was on notice of his conversion rights, but also that Baker Hughes made a good faith effort to notify him of such rights. Hobbs, moreover, fails to offer even a scintilla of evidence attempting to establish Baker Hughes' intent or bad faith in sending the relevant documents to the Baker Hughes worksite. Plaintiff merely relies on conclusory allegations to establish the supposed breach of Baker Hughes' fiduciary duty. *See, e.g.*, Dkt. No. 37 at p.6 ("There is no dispute that Defendant did not keep its promise and that it breached its duty by failing to send the conversion notice or "porting" notice to the [residential] address."). Unsubstantiated assertions

---

[6] Some courts have found that a fiduciary breaches his duty by providing plan participants with materially misleading information "regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *See Krohn v. Huron Mem. Hosp'l*, 173 F.3d 542, 546 (6th Cir. 1999). Even if the Court were to adopt this standard for finding a fiduciary breach, Baker Hughes' actions here were not materially misleading and thus the Court would not find that a breach had occurred.

such as these are not competent summary judgment evidence.  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  That Baker Hughes failed to send the Conversion Notices and Application to the correct address based on a clerical oversight is hardly sufficient to establish a breach of fiduciary duty under the standards set out above.  Although it is true ERISA requires people who are involved in the administration or maintenance of benefits plans to act in good faith and in a timely and prudent manner, slight ministerial errors such as Baker Hughes' do not rise to the level of a breach of fiduciary duty.  *Bodine*, 352 F.3d at 251.

Thus, the Court finds that Baker Hughes did not breach its fiduciary duties as mandated by ERISA.  Hobbs' relief sought under section 502(a)(3), which is premised on a breach of fiduciary duty, is accordingly unavailable.  This alone is sufficient to grant Baker Hughes' summary judgment.  However, even assuming *arguendo* that Baker Hughes acted in a fiduciary manner and breached its fiduciary duties, Defendant is entitled to summary judgment because Hobbs has failed to raise a genuine issue of material fact as to whether Baker Hughes' breach caused Hobbs' injury.

### B. Causation

For an ERISA fiduciary to be liable for breach of a fiduciary duty, the plaintiff must show a causal link between the supposed breach and the loss for which the plaintiff seeks to recover.  *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007) (requiring that a plaintiff's injury result from the alleged breach of fiduciary duty); *see also Allison v. Bank One-Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002) ("The liability provision of ERISA, 29 U.S.C. § 1109(a), makes a fiduciary liable for 'losses . . . resulting from each such breach' of its fiduciary duty. The phrase 'resulting from' indicates that there must be a showing of 'some causal link between the alleged breach . . . and the loss plaintiff seeks to recover.'") (citations omitted).

In its Motion for Summary Judgment (Dkt. No. 37), Baker Hughes notes the complete lack of evidence that "had Mr. Hobbs received [the Conversion Notices and Application], he would have . .

. converted his Baker Hughes life insurance coverage to individual policies." Dkt. No. 37 at p.12. Reviewing the record, there is a notable absence of any inquiry from the Hobbs as to the status or location of the conversion and application documents. During the nine months following Mr. Hobbs termination, no attempt was made to convert or inquire about converting his company-provided policies. Moreover, on the day of his termination and on the heels of receiving the Baker Hughes Letter informing him of his conversion rights, Mr. Hobbs stated to his wife that "all benefits ended." *See* Deposition of Diane Hobbs, Dkt. No. 37, Ex. A at pp.56, 122. This lack of evidence together with his statement indicates Mr. Hobbs' lack of intent to convert his policies.

    As stated above, a summary judgment movant has the initial burden of demonstrating the absence of a material fact issue. *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279-80 & n. 6 (5th Cir. 1991). If it satisfies that burden, the non-movant must identify specific evidence in the record demonstrating a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial. FED.R.CIV.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Baker Hughes has indicated the absence of a genuine issue of material fact as to whether Mr. Hobbs would have converted his insurance policies to an individual plan if he had received the Conversion Notices and Application. Hobbs has not demonstrated a fact issue concerning this crucial element. The only means by which Hobbs has addressed this issue is by restating the undisputed fact that Baker Hughes failed to send the Conversion Notices and Application to the correct address. *See* Dkt. No. 41 at pp.9-10. Hobbs has failed to identify any evidence in the record, and the Court can find none, indicating that had Mr. Hobbs received the documents, he would have converted his company-provided coverage to a personal policy. Thus, Hobbs has failed to raise a triable issue of fact regarding the essential element of causation. This further justifies granting Baker Hughes' summary judgment.

### C. Conclusion Regarding Relief Available Under ERISA § 502(a)(3)

The Court has determined that—even assuming Baker Hughes acted as a fiduciary—its breach does not rise to the level of misconduct typically associated with fiduciary breaches by employers under ERISA. Moreover, the Court finds that even if it were to identify an actionable breach, the summary judgment record presents no genuine issue of material fact that such breach caused Hobbs' injury. Because the Court has identified several grounds on which to grant Defendant's summary judgment as to the relief available under ERISA 502(a)(3), it need not determine whether reinstating Hobbs into the Plan is an appropriate equitable remedy under the circumstances. Therefore, Baker Hughes' motion for summary judgment of the ground that Hobbs may not recover under section 502(a)(3) of ERISA is granted. Having dealt with all of Hobbs' causes of action and granting summary judgment for the Defendant as to each, the Plaintiff's action shall be dismissed.

### Conclusion

Based on the foregoing, the Court hereby rules as follows:

1. Defendant's Motion for Summary Judgment (Dkt. No. 37) is **GRANTED**;

2. Plaintiff's claims against Defendant are hereby **DISMISSED**.

It is so ORDERED.

Signed this 28th day of November, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE